## HOOVER v. SALLING.

(Circuit Court of Appeals, Seventh Circuit. June 25, 1901.)

### No. 764.

PUBLIC LANDS—CASH ENTRY OF TIMBER LANDS—CONSTRUCTION OF STATUTE.
Under Act June 3, 1878 (20 Stat. 89), extended by Act Aug. 4, 1892 (27 Stat. 348, c. 375), permitting the sale to citizens of the United States of public timber lands, not exceeding 160 acres to one person, on the filing by the applicant of a declaratory statement under oath setting forth that the land is unfit for cultivation, and is chiefly valuable for timber, etc., and on proof of such facts after notice given, an applicant is not required to make a personal inspection of the lands before filing the initial statement, so as to be able to verify the same from personal knowledge; nor is there any ground for refusing to permit a purchase to be made by a married woman because she procured the money with which to make payment for the land from her husband.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

The bill was by the appellant, a citizen of the state of Wisconsin, against the appellee, a citizen of the state of Michigan, to have it decreed that appellee had no right, title, interest or claim, in certain lands in Bayfield county, Wisconsin, in the bill described, but that the same should be decreed to have been held by him in trust for the appellant; and for an injunction against the sale of the same, or waste of the timber thereon.

The bill alleges that on the 13th of April, 1894, the lands in question were surveyed public lands of the United States not included within any military, Indian or other reservation, and chiefly valuable for timber; that they had not been offered at public sale; did not constitute any mining claim under the laws of the United States; did not contain gold, silver, cinnabar, copper or coal; did not include the improvements of any bona fide settler; had not been selected by any state under the laws of the United States, donating lands for internal improvement, education or other purposes; and were lands proper to be entered as public lands under the provisions of the Act of Congress of June 3rd, 1878, as extended by the Act of August 4th, 1892.

The bill further alleges that on the date above named appellant, being then entitled to enter such lands, filed with the register of the land district at Ashland, Wisconsin, a written statement in duplicate, designating by legal subdivision the lands in question; and setting forth that the same were then unfit for cultivation; were uninhabited, and chiefly valuable for their timber; and contained no mining or other improvements. The statements further set forth that the appellant had made no other application under the act of Congress; that the proposed purchase was not for speculation, but was in good faith, and to be appropriated to her own exclusive use; that she had not directly or indirectly made any contract in any way or manner with any person by which the title she might acquire should enure, in whole or in part, to the benefit of any person except herself; and that the lands, as she verily believed, contained no valuable deposits of gold, silver, cinnabar, copper or coal. This statement was duly verified by the oath of the applicant before the register of the land office.

The bill avers that all the allegations of this statement were true; that after publication of the requisite statutory notice the appellant appeared at the land office, and submitted her proofs, requesting that her claim be allowed, and offering, then and there, to pay the price provided for in the act of Congress; but that one Toole (who had subsequently made an application for the same lands, but had, for a valuable consideration, relinquished the same to the appellant) filed a protest, setting forth that appellant had never been upon or seen the lands, or any part thereof, at the time of her application, and that he, said Toole, had filed an application under the act of Congress for said lands. The bill avers, further, that appellant furnished

to the register of the land office satisfactory evidence that the notice had been duly published as required by the act of Congress; and that the land was of the character contemplated in the act, was unoccupied and without improvement, and contained no valuable deposit of gold, silver, cinnabar, copper or coal.

The bill further avers that such proceedings were thereafter had in the land office, and in the general land office of the United States, that appellant was "erroneously and unlawfully held not entitled to enter the lands," upon the reason stated that she had not, before making her application, made a personal examination of the land, and that she did not offer to pay for the same with her own money, but obtained such money from her husband.

Subsequently, as the bill avers, a patent for the land was issued to Toole, and the title went through mesne conveyances from him to the appellee, each grantee having full notice of the right and interest of appellant in the lands, and not being a bona fide purchaser thereof for value.

To this bill a demurrer was filed and sustained, and the bill dismissed (102 Fed. 716), and from this decree the appeal is prosecuted.

The assignment of error is that the Circuit Court erred in sustaining the demurrer, and in dismissing the bill.

A. L. Sanborn, for appellant.
Wm. F. Shea, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

After the foregoing statement of the facts, GROSSCUP, Circuit Judge, delivered the opinion of the court as follows:

The provisions of the act of Congress relevant to this case are as follows:

"That surveyed public lands of the United States * * * not included within military, Indian, or other reservations of the United States, valuable chiefly for timber, but unfit for cultivation, and which have not been offered at public sale, according to law, may be sold to citizens of the United States, or persons who have declared their intention to become such, in quantities not exceeding one hundred and sixty acres to any one person or associations of persons, at the minimum price of two dollars and fifty cents per acre; the lands valuable chiefly for stone may be sold on the same terms as timber lands: Provided, that nothing herein contained shall defeat or impair any bona fide claim under any law of the United States, or authorize the sale of any mining claim, or the improvements of any bona fide settler, or lands containing gold, silver, cinnabar, copper, or coal, or land selected by the said states under any law of the United States donating lands for internal improvements, education or other purposes."

Sec. 2. "That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation, and valuable chiefly for its timber and stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes, where any such do exist, save such as were made by or belonged to the applicant, nor, as deponent verily believes, any valuable deposit of gold, silver, cinnabar, copper or coal; that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire, from the Government of the United States should inure, in whole or in part, to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or receiver of the land office within the district where the land

is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same.     *   *   *"

Sec. 3. "That upon the filing of said statement, as provided in the second section of this act, the register of the land office shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication, at the expense of such applicant, in a newspaper published nearest the location of the premises, for a like period of time; and after the expiration of the said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register of the land office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as herein required; secondly, that the land is of the character contemplated in this act, unoccupied and without improvements, other than those excepted, either mining or agricultural, and that it apparently contains no valuable deposits of gold, silver, cinnabar, copper, or coal.   *   *   *:   Provided, That any person having a valid claim to any portion of the land may object, in writing, to the issuance of a patent to the lands so held by him, stating the nature of his claim thereto; and evidence shall be taken, and the merits of said objection shall be determined by the officers of the land office, subject to appeal, as in other land cases.   Effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office."   Act of June 3, 1878 (20 Stat. 89) as extended by act of August 4, 1892 (27 Stat. 348, c. 375).

Under these provisions of the law, the appellant, a citizen of the United States, entitled, along with the other citizens of the United States, to enter timber lands, filed with the land office the requisite statutory statement, verified by oath, which, if subsequently sustained by the proofs, entitled her to the entry sought.   It is admitted that the averments of the statement were, in fact, true.   The entry was refused, not because the land was not subject to entry, nor because the statement, wholly or in part, was untrue, nor because of any attempted imposition or fraud upon the land office; but solely because it transpired upon the hearing that in making the statement the appellant did not speak from knowledge acquired by personal inspection, and did not offer to pay from monies belonging to herself. The first question in this case, therefore, is:   May an applicant for entry under this statute make the statutory initial statement upon knowledge or information other than that of personal observation?

It will be noted that the statute requires no residence upon the land by the applicant, either at the time, or subsequently; nor does it require him, either presently, or in the future, to utilize the land, by either cutting the timber, or quarrying the stone.   There is in the statute no purpose nor requirement, in these respects, such as the homestead laws embody.

The purpose of the act seems to have been of an entirely different character.   It was based manifestly upon the possibility that much of the timber and stone on these lands would not be needed for years to come, though, with the passage of time, their value would increase; and it was meant that the opportunities thus afforded for increased valuation should not be monopolized by a few, but should be open equally to all, so that the increment, whatever it was, might be shared widely by the people of the United States.   The act was, in a sense,

an attempt to widely distribute and popularize the ownership of these lands.

We cannot conceive that Congress meant, in the promotion of such a purpose, to shut out citizens of the United States who lived at great distances, or were physically incapacitated to explore the woods, or citizens who, for any reason, could not personally inspect the lands. The invitation was to all, wheresoever they resided, and whatsoever their means of acquiring information, who could comply with the procedure laid down by the statute.

This procedure embraced, first a statement, verified by oath, of the character of the lands, the right of the applicant to enter, and the purpose of his proposed entry; and then, after notice, a hearing, either ex parte or upon contest—but in either event a hearing—at which, and before allowance of the application, the statement must be supported by satisfactory proof. It is clear to us, in view of this, that the statement is meant simply as an initial paper—the claim or pleading—upon which the machinery of the land office is to be set in motion. The statement is not accepted as proof, and it does not perform the office of proof; that must come at the hearing. It is in the nature of a petition to the land department, setting forth all the material facts upon which action is invoked, and is, in this general respect, analogous to verified petitions, or bills, in courts of chancery.

It is common knowledge that, while many initial pleadings in a court of chancery, in cases where verification is required, must be verified upon the personal knowledge of the petitioner, many others may be verified on knowledge acquired through information, accompanied by bona fide belief upon the part of the petitioner. The distinction depends upon the nature of the subject-matter, and of the relief asked. If the application is such, that the party should, from the nature of his position, or the character of the relief asked, have personal knowledge of the facts set forth, then knowledge through information from others will not suffice. But if the determination of the case depends, not upon what facts were within the personal knowledge of the applicant, but upon the existence of the facts themselves, extrinsic of his personal knowledge; and if the position of the petitioner is such, that personal knowledge on his part cannot be reasonably expected, courts will proceed upon statements founded upon information and belief, though, by statute, there be a requirement that the petition or bill be verified. Carpet-Lining Co. v. Chipman, 146 Mass. 385, 16 N. E. 1.

Section 2 of the act provides that the statement shall be verified by oath, but it does not, in terms at least, provide that the verification shall be on personal knowledge only, and shall not, in any of its particulars, be upon information and belief. We think we should apply to this section of the statute the rules adopted in analogous pleadings where verification is required; and, so doing, we cannot see why that portion of the statement relating to the character of the lands—that it is uninhabited, is unfitted for cultivation, and valued chiefly for timber or stone—may not be predicated upon information and belief. Any other interpretation, would, in our opinion, import into the procedure a restriction not to be found in the procedure of

the courts in analogous inquiries; and would defeat one of the main purposes of the act.

We hesitate, of course, to interpret a statute contrary to the construction put upon it by the Interior Department, and to the rules and regulations adopted by the department to carry out its provisions; but when the construction of the department is clearly wrong, and its rules and regulations have the effect of distinctly changing rights created under the statute, amounting to a denial to the appellant of one of her rights, the occasion for hesitation ceases. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267.

We are of the opinion that the rules and regulations of the department, as applied to the case under consideration by the land office, and upheld by the Circuit Court, have had the effect of depriving the appellant of one of her rights under the law, and are, therefore, in that respect, contrary to law and erroneous.

No attempt was made at argument, or in the briefs, to sustain the ruling based upon the appellant's failure to offer payment from monies belonging to herself, except that such ruling was in accordance with one of the rules of the land office. We can find no basis, either for the regulation, or for the court's decree, in that respect, in the provisions of the act.

The decree of the Circuit Court will be reversed, and the cause remanded, with instructions to proceed further in accordance with this opinion.