# BALLINGER *v.* UNITED STATES EX REL. NESS.

MANDAMUS; PUBLIC OFFICERS; REGULATIONS; STATUTES; PUBLIC LANDS.

1. A petition for a writ of mandamus to compel the Secretary of the Interior to accept an application made by the petitioner for the purchase of public land, and issue a patent to him therefor, is not the case of one seeking to establish a title to land as against the United States, but of one seeking to compel the performance of a ministerial duty imposed upon the respondent by the terms of a statute, and the duty, if there is one, does not cease to be ministerial because it requires in some degree the construction of the language of the statute. (Following *Roberts* v. *United States*, 13 App. D. C. 38, 176 U. S. 221, 44 L. ed. 443, 20 Sup. Ct. Rep. 376.)

2. Where a statute requiring the performance of an administrative duty by the head of the executive department of the government confers

the power upon him to make proper regulations for carrying the statute into effect, such regulations have all the force of law, if not in conflict with the law itself or in plain excess of its requirements.

3. The construction of a statute by the executive department of the government charged with its administration, early made and uniformly followed for a number of years, is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons.

4. While the act of Congress of June 3, 1878 (20 Stat. at L. 89, chap. 151, U. S. Comp. Stat. 1901, p. 1545), known as the "timber and stone act," providing for the sale of timber lands unfit for cultivation and containing no minerals, does not expressly require that the verification of the application shall be upon personal knowledge only of the applicant, the intention seems to be implied, and a regulation made by the Secretary of the Interior in supposed conformity with the direction of the statute that he prescribed regulations for carrying it into effect, that the applicant shall make a sworn statement that he has personally examined the land, and from his personal knowledge it is unfit for cultivation, and valuable chiefly for its timber, is not in conflict with or in excess of the power conferred by the statute. (Citing *Martin* v. *Martin & B. Co.* 27 App. D. C. 59, 7 A. & E. Ann. Cas. 47.)

5. The presentation to the General Land Office of a verified application for the purchase of public land under a statute permitting its purchase under certain conditions is not the filing of a mere initial paper in the form of a pleading setting forth facts thereafter to be established upon hearing, but the application is rather in the nature of preliminary proof.

No. 1984.   Submitted April 6, 1909.   Decided April 20, 1909.

HEARING on an appeal by the respondent from an order of the Supreme Court of the District of Columbia sustaining a demurrer by the petitioner for the writ of mandamus, to the return of the respondent to a rule to show cause why the writ should not issue, and directing the issuance of the writ.

*Reversed.*

The COURT in the opinion stated the facts as follows:

The relator, Mary S. Ness, petitioned the supreme court of the District for a writ of mandamus to compel James R. Gar-

field, then Secretary of the Interior, to accept an application made by her for the purchase of a parcel of the public land, under the "timber and stone act." Demurrer to the respondent's return to the notice to show cause was sustained, and the writ ordered to issue. From this order Secretary Garfield appealed. Having retired from office, his successor, Richard A. Ballinger, has been substituted as appellant.

The following facts are established by the allegations and admission of the pleadings: On December 13, 1907, Mary S. Ness filed in the United States Land Office at Roseburg, Oregon, an application for the purchase of certain parts of a section of land in that district, under the provisions of the act of June, 3, 1878. The affidavit accompanying said application is not made an exhibit to the petition, but is described as follows: "Showing that she was duly qualified as an applicant for said tract under said act of Congress, and that according to her information and belief the said land was non-mineral, unfit for cultivation, chiefly valuable for its timber, not inhabited or covered by any bona fide improvement or by a mining location; that she had not personally examined the land herself, because she was physically unable to do so, and furthermore would not have understood its character even if she had done so, but that she had employed an expert woodsman to examine it for her."

On the same day, she filed the affidavit of Clark P. Devereaux, to the effect that he was the agent of the applicant, an expert woodsman, and understood the character and value of timber lands; and that the lands described were unfit for cultivation, chiefly valuable for their timber, containing no mining or other improvements, and no valuable deposit of mineral or coal, and that affiant had no interest in the application. The register and receiver of the local land office rejected the application for the sole reason as stated, that "applicant has not personally examined the land."

On appeal to the Commissioner of the General Land Office the rejection was affirmed. The Secretary, on appeal to him, affirmed the decision of the Commissioner, and, on August 20, 1908, entered a final order rejecting the said application.

The return of the Secretary avers that the requirement that an applicant shall make affidavit to personal examination of the land is statutory, and cannot be dispensed with; and that this has been the construction of the statute uniformly maintained in its enforcement. This construction is embodied in the regulations of the Secretary of the Interior on July 16, 1878, issued for the instruction of the local land officials in administering said statute.

The act of Congress approved June 3, 1878 (20 Stat. at L. 89, chap. 151; U. S. Comp. Stat. 1901, p. 1545), provides in sec. 1 for the sale of not exceeding 160 acres of public land, unfit for cultivation and valuable chiefly for timber and stone.

Sections 2 and 3 read as follows:

"Sec. 2. That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation, and valuable chiefly for its timber or stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes, where any such do exist, save such as were made by or belonged to the applicant, nor, as deponent verily believes, any valuable deposit of gold, silver, cinnabar, copper, or coal; that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit, and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or the receiver of the land office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be sub-

ject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be null and void.

"Sec. 3. That upon the filing of said statement, as provided in the second section of this act, the register of the land office shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication, at the expense of such applicant, in a newspaper published nearest the location of the premises, for a like period of time; and after the expiration of said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register of the land office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as herein required; secondly, that the land is of the character contemplated in this act, unoccupied and without improvements, other than those excepted, either mining or agricultural, and that it apparently contains no valuable deposits of gold, silver, cinnabar, copper, or coal; and upon payment to the proper officer of the purchase money of said land, together with the fees of the register and the receiver, as provided for in case of mining claims in the twelfth section of the act approved May 10, 1872, the applicant may be permitted to enter said tract, and, on the transmission to the General Land Office of the papers and testimony in the case, a patent shall issue thereon: *Provided,* That any person having a valid claim to any portion of the land may object, in writing, to the issuance of a patent to lands so held by him, stating the nature of his claim thereto; and evidence shall be taken, and the merits of said objection shall be determined by the officers of the land office, subject to appeal, as in other land cases. Effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of The General Land Office."

Among the regulations prescribed by the Land Department

immediately after the passage of the act is one which requires the applicant to make the following sworn statement: "I have personally examined said land, and from my personal knowledge state that said land is unfit for cultivation, and valuable chiefly for its timber." A further regulation of May 21, 1887, requires that the sworn statement shall be made upon personal knowledge of the applicant, except in particulars in which the statute provides that the affidavit may be upon information and belief.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia; *Mr. F. W. Clements,* First Assistant Attorney, Interior Department; *Mr. Oscar Lawler,* Asst. Atty. General, Interior Department, and *Mr. Stephen W. Williams,* Asst. Attorney, for the appellant.

*Mr. Samuel Herrick* and *Messrs. Walton & Ness* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. Responding, first, to the persistent pressing of the question of jurisdiction to review the action of the head of an executive department, it is sufficient to say that this is not the case of one seeking to establish a title to lands as against the United States, but of one seeking to compel the performance of a ministerial duty imposed upon the officer by the terms of a statute. The duty, if such, does not cease to be ministerial because it requires, in some degree, the construction of the language of a statute. *Roberts* v. *United States,* 13 App. D. C. 38, 46; *Roberts* v. *United States,* 176 U. S. 221, 231, 44 L. ed. 443, 447, 20 Sup. Ct. Rep. 376.

2. In legislation of this kind, requiring the performance of administrative duties by the head of a department to put it in execution, it is usual, as was done in the foregoing statute, to confer the power to make appropriate regulations for carrying

the same into effect.    Such supplementary regulations have all
the force of law if not in conflict with the law itself, or in plain
excess of its requirements.    The officer is not authorized to
make the law, but to prescribe reasonable regulations for its ef-
fective administration, not inconsistent therewith or in addition
thereto.    *Re Kollock,* 165 U. S. 526, 533, 41 L. ed. 813, 815,
17 Sup. Ct. Rep. 444, and cases there cited; *Davis* v. *Massa-
chusetts* 167 U. S. 43, 48, 42 L. ed. 71, 72, 17 Sup. Ct. Rep.
731; *Williamson* v. *United States,* 207 U. S. 425, 462, 52 L.
ed. 278, 297, 28 Sup. Ct. Rep. 163.

The construction of a statute by the department charged with
its administration, early made and uniformly followed for a
number of years, is always entitled to the most respectful con-
sideration, and ought not to be overruled without cogent reasons.
*United States* v. *Moore,* 95 U. S. 760, 763, 24 L. ed. 588, 589;
*Hastings & D. R. Co.* v. *Whitney,* 132 U. S. 357, 366, 33 L.
ed. 363, 367, 10 Sup. Ct. Rep. 112; *United States* v. *Finnell,*
185 U. S. 236, 244, 46 L. ed. 890, 893, 22 Sup. Ct. Rep. 633,
and cases there cited.

3. After a careful consideration of the provisions of this
statute, we are not prepared to say that the regulations of the
department are in conflict therewith, or that the action of the
Secretary in rejecting the application is founded on an erroneo-
ous construction of its language.    While extending its benefits
to all citizens of the United States and persons who have taken
the necessary steps to become such, without regard to resi-
dence, the statute expressly requires that the oath shall be
made in person before the local officer of the district in which
the land lies, and seems to contemplate that it shall, in part,
be made upon actual, personal knowledge.    The necessary facts,
that the land shall be unoccupied, unfit for cultivation, and
chiefly valuable for timber and stone, are capable of exact and
certain statement after its inspection.    Whether there may be
mineral deposits in the land is a fact that the average applicant
would not, ordinarily, be able to determine by going upon the
land and making careful examination.    Hence, while the first

statement must be positive, as of actual knowledge, the second may be upon belief merely.

While it is true, as stated in a case relied on by the appellee, and which will be reviewed later, that the statute does not expressly provide that the verification of the application shall be upon personal knowledge only, yet that intention seems to be clearly implied. If not so intended, why the insertion of the provision that the fact as to the existence of mineral deposits may be stated upon belief? This was wholly unnecessary if it had been intended that the preceding facts might be stated as a matter of belief also. Moreover, the statute requires that the verification shall be by the applicant in person. It cannot be made in his name by an agent or attorney. *Martin* v. *Martin & B. Co.* 27 App. D. C. 59, 62, 7 A. & E. Ann. Cas. 47. This requirement would be practically nugatory if the affidavit of necessary facts could be made solely upon information derived from an agent. That it was the intention that the necessary positive statement of facts should be upon the personal knowledge of the applicant, necessarily to be acquired by examining the land, seems to be confirmed by the last clause of sec. 2, which declares that, if any person shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same. If the entire affidavit can be made upon information and belief, it is difficult to see how the pains and penalties of perjury could be visited upon the applicant. If perjury could be maintained at all upon such an affidavit, the question of guilt would depend not upon the falsity of the statement of the facts as to occupancy and unfitness for cultivation, but upon the falsity of the applicant's belief in the truth of the representations made to him in this regard by his agent or representative. It would be practically impossible to establish wilful and corrupt false swearing in such a case.

The construction given to the statue by the regulations of the Land Department has been upheld in the circuit court for the district of Oregon in a prosecution for perjury. *United*

*States* v. *Wood,* 70 Fed. 485, 486. In that case it was said by Judge Bellinger: "It is competent under this statute for the proper officers of the government, as a regulation in the sale of these lands, to require the affidavit of personal examination and personal knowledge on the part of the applicant. The oath required by the act of Congress providing for the sale of these lands contains two parts: One, that the land is unfit for cultivation, uninhabited, and unimproved; and the other, that, to the best of the belief of the applicant, the land contains no valuable deposits of mineral, etc. This last part may be made on information, but the first statement necessarily implies a personal knowledge of the land. The requirement of the Department as to the affidavit of personal examination is in conformity with the requirement of the first part of the oath provided by the statute."

A different construction has been given in a later case by the court of appeals of the seventh circuit, upon which the appellee relies. *Hoover* v. *Salling,* 49 C. C. A. 26, 110 Fed. 43, 46.

That suit was against a defendant holding under a patent. Complainant alleged that she had made application for the land, and made the preliminary oath in due form. That she had submitted the proof required by sec. 3 and tendered payment of the purchase price. That one Toole had made a later application and filed a patent against complainant's entry, alleging that she had never been upon or seen the land or any part thereof. That the Land Department rejected complainant's application upon the ground that she had not complied with the regulation requiring a personal examination of the land, and issued the patent to Toole, under whom defendant held. A decree dismissing the bill was reversed. After reciting the procedure required by the statute, the court said: "It is clear to us, in view of this, that the statement is meant simply as an initial paper—the claim or pleading—upon which the machinery of the land office is to be set in motion. The statement is not accepted as proof, and it does not perform the office of proof; that must come at the hearing. It is in the nature of a petition to the Land Department, setting forth all the ma-

terial facts upon which action is invoked, and is, in this general respect, analogous to verified petitions, or bills, in courts of chancery.   *   *   *   Section 2 of the act provides that the statement shall be verified by oath, but it does not, in terms, at least, provide that the verification shall be on the personal knowledge only, and shall not   *   *   *   be upon information and belief.   We think we should apply to this section of the statute the rule adopted in analogous pleadings where verification is required; and, so doing, we cannot see why that portion of the statement relating to the character of the land—that it is uninhabited, is unfitted for cultivation, and valued chiefly for timber or stone—may not be predicated upon information and belief.   Any other interpretation would, in our opinion, import into the procedure a restriction not to be found in the procedure of the courts in analogous inquiries; and would defeat one of the main purposes of the act."

With the greatest respect for the learned court from whose opinion we have quoted, we are nevertheless constrained to say that we are not impressed with the soundness of its reasoning. We cannot regard the presentation of the verified application as a mere initial paper in the form of a pleading, setting forth facts thereafter to be established upon hearing.   It is rather in the nature of "preliminary proof," as called in *Williamson* v. *United States,* 207 U. S. 459, 52 L. ed. 295, 28 Sup. Ct. Rep. 163.   As indicated in that case, there are two stages of hearing, —the preliminary one, after which notice is published, and the second, or final one, after publication.   This preliminary proof is the essential step by which the applicant secures pre-emption. It is important as well as reasonable that such proof should be positive and direct in order to secure a preference over other applicants.   While this proof is not made sufficient to warrant the issue of the patent, and must be followed by publication, and supported by other satisfactory evidence that the land is of the character contemplated, that is to say, unoccupied, without improvements, unfit for cultivation, and valuable chiefly for timber or stone, it is sufficient as to other material facts, namely, that the application is made in good faith for the exclusive bene-

fit of the applicant, and that he has not, directly or indirectly, made any agreement or contract by which the title he might obtain should inure to the benefit of any other person than himself. As to these, the preliminary proof is all that is required by the statute, and the Land Department has no power to require more. *Williamson* v. *United States,* 207 U. S. 425, 460, 52 L. ed. 278, 296, 28 Sup. Ct. Rep. 163.

We regard the analogy of the procedure under this statute as rather with those special statutory proceedings which are required to be supported by affidavit, than with the ordinary procedure in accordance with the equity rules. In the procedure of the first kind, providing for the issue of attachments, temporary injunctions, etc., the required affidavit may be separate, or by way of verification of initial pleadings; but, in either case, the facts must be alleged as within the personal knowledge of the party, and not upon information and belief. *Atchison* v. *Bartholow,* 4 Kan. 124, 127; *Thompson* v. *Higginbotham,* 18 Kan. 42, 44; *Dyer* v. *Flint,* 21 Ill. 80, 83, 74 Am. Dec. 73; *Gawtry* v. *Doane,* 51 N. Y. 84, 89; *Neal* v. *Gordon,* 60 Ga. 112, 114; *Lewis* v. *Connolly,* 29 Neb. 222, 224, 45 N. W. 622.

Our conclusion is that the regulation of the Land Department is not in conflict with, or in excess of, the power conferred by the statute. The judgment must, therefore, be reversed with costs and the cause remanded with direction to dismiss the petition.

*Reversed.*

On application of the appellee, a writ of error to the Supreme Court of the United States was allowed May 14, 1909.