## BYRON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 6, 1921. Rehearing Denied August 1, 1921.)

No. 3606.

1. **Post office ⬤══48(4)—Indictment held to charge use of mails to carry out scheme to defraud.**

   An indictment under Penal Code, § 215 (Comp. St. § 10385), sufficiently charged use of the mails in execution of a scheme to defraud by collecting money under pretense defendant could secure title to reserved parts of public domain for the person defrauded, which, after setting out the scheme, charged that defendant did willfully and for the purpose of carrying out the scheme mail a writing, styled an appeal, though the paper mailed might not on its face indicate intention to defraud.

2. **Post office ⬤══35—Elements of use of mails in executing scheme to defraud stated.**

   The mails are used in execution of scheme to defraud, contrary to Penal Code, § 215 (Comp. St. § 10385), if one with corrupt intent has devised a scheme to defraud by getting money from the people through deceit and misrepresentations, and for the purpose of carrying out such scheme puts a writing in the mails, whether or not the writing is valid.

3. **Post office ⬤══48(4)—Indictment for use of mails to defraud held not defective, as showing impossibility of execution of the scheme alleged through the means charged.**

   An indictment, under Penal Code, § 215 (Comp. St. § 10385), for use of mails to defraud by securing money from people by promising to secure rights to reserved) public lands by means of applications made through defendants, *held* not defective as showing on its face that there was an intrinsic impossibility of bringing the prosecution of the claims within the scope of the fraudulent scheme alleged.

4. **Post office ⬤══35—Erroneous statement of law may constitute part of scheme for fraudulent use of mails.**

   An erroneous statement of law, if willfully made, may constitute part of scheme to use the mails to defraud in obtaining money from people by promising to secure rights to certain reserved public lands by application therefor made through defendants.

5. **Post office ⬤══50—Modification of instruction in prosecution for fraudulent use of mails held properly denied.**

   Modification of instruction in prosecution for fraudulent use of mails *held* properly denied.

6. **Post office ⬤══49—Evidence of statements by defendant to person defrauded by use of mails held admissible.**

   In a prosecution for fraudulent use of mails, it was not error to permit a witness to testify to statements made in his presence by defendant to a person sought to be defrauded, though such person was not called as a witness.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Carlos L. Byron and Edward M. Comyns were convicted under an indictment charging violation of and conspiracy to violate Penal Code, § 215, and they bring error. Affirmed.

Plaintiffs in error Byron and Comyns were convicted under 46 counts of an indictment, 45 charging violation of section 215 of the Penal Code (Comp. St. § 10385) and 1 count charging conspiracy to violate that section (section 37 of the Penal Code [Comp. St. § 10201]). Writ of error was sued out.

The scheme alleged pertained to lands in Washington and was as follows:

Certain lands forming part of the public domain had been withdrawn from entry and application to purchase under the Timber and Stone Act and were put within the limits of the Olympic National Forest by presidential proclamation; certain lands had been selected by the state as school indemnity selection, which selections had been approved by the Secretary of the Interior, who was without authority to convey such land; certain other lands were included in lieu selections made under the act of Congress approved June 4, 1897 (the Forest Lieu Land Act [30 Stat. 36]), which said selections were pending before the Department of the Interior, and while so pending were not subject to application or entry under the Timber and Stone Act; certain other lands were embraced within school indemnity selections of the state, which had been allowed by the register and receiver and were pending before the Department of the Interior, and while such selections were so pending no rights to the lands could be acquired by application to purchase under the timber and stone laws.

It is alleged that the defendants falsely pretended to certain "victims" that preference rights and patents to said lands could be secured by means of applications to enter presented through defendants, and defendants promised that upon payment of certain sums to them title to said lands could be obtained through the Department of the Interior within periods of time varying from a few months to two years, and that in the event of failure to obtain titles defendants would repay to the victims the money they had paid; whereas defendants knew no rights or preferences could be secured through the Department of the Interior by virtue of such applications under the Timber and Stone Act, and defendants knew the victims would receive nothing of value for what they were induced to pay to defendants, and defendants had no intention of repaying any money, but it was a part of the scheme to induce the victim by false statements and representations upon which the victims relied, to part with their money by making them promises of repayment in the event title could not be secured. It is alleged that defendants also represented that it was not necessary that the victim should personally visit and inspect the land before making application, and that title could be secured for the nominal sum of $2.50 per acre and no more; whereas, defendants knew the lands, if subject at all to sale, would first be appraised by the Department of the Interior and sold at their appraised value, and not necessarily at the sum of $2.50 per acre, and knew that applications under the Timber and Stone Laws would not be allowed or recognized unless there had been a previous personal examination of the lands by the intending purchaser.

Further allegation is that the defendants falsely represented that while the applications would probably be rejected by the local land office, pursuant to regulations of the Department of the Interior, said regulations were void, and that defendants by their long experience would secure the annulment of said regulations by appeals to the Commissioner of the General Land Office and Secretary of the Interior, or in some other manner, and that in the meantime the applications would be kept alive by appeals or proceedings pretended to be known to the defendants, so that the victims would be awarded first right of entry in any event; whereas, defendants well knew they could not secure annulment of the regulations referred to, and well knew that no rights to the lands could be secured by such applications, or any appeals in support thereof.

It is alleged that defendants falsely pretended to the victims that defendants had associates in Washington through whom advance information would be obtained concerning cancellation of pending entries; whereas defendants had no means of securing such information that was not possessed by the public at large. It is charged that the purpose was to defraud and to misrepresent, and to induce victims to pay money which defendants intended to appropriate and did approriate to their own use. Specific acts are charged

to have been unlawfully and feloniously done for the purpose of executing the scheme. For example, intending to defraud Emma V. Christensen, defendants at Seattle placed or caused to be placed in the mail, addressed to the Commissioner of Public Lands of the state of Washington, a paper filed in the United States land office, styled an appeal to the Commissioner of the General Land Office at Washington, D. C., from the decision of the local land officers rejecting an application of Emma V. Christensen made through defendants to purchase certain described tracts under the timber and stone acts.

The conspiracy count elaborately charges a combination to devise a scheme to defraud certain people and the public generally by means of the post office establishment by a plan such as has been already outlined. Many overt acts are alleged to have been done in furtherance of the conspiracy and to effect the object thereof. Among other acts pleaded it is alleged that papers called appeals from the decision of the local land officers were mailed, letters containing copies of decisions by the Interior Department officials were received wherein the decision of the Commissioner of the General Land Office was affirmed. Letters from defendant Comyns to one Shull, named as a "victim," are set forth, wherein Comyns advises Shull that, while his application has not been allowed, hearing upon the case has been set, and that he would never lose a cent in the matter, and that the land is still government land; that title has not passed.

The bill of exceptions does not include all the evidence, but by stipulation it appears that defendants used the mails at the times and places charged in the indictment; that witnesses for the government testified that applications for lands under the timber and stone act on which they had been located by the defendants were promptly rejected in the local land office; that some of the witnesses for the government testified that defendants represented that by filing applications in the land office they could obtain title to the lands, and that nothing was said about the necessity of going into court to secure their rights. Further stipulation is that the United States adduced oral and written testimony in proof and support of and tending to prove and establish the 46 counts of the indictment under which conviction was had.

P. V. Davis and S. H. Piles, both of Seattle, Wash., and C. A. Keigwin, of Washington, D. C., for plaintiffs in error.

Robert C. Saunders, U. S. Atty., and Francis C. Reagan, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). [1, 2] The defendants contend that the indictment is fatally defective, because it fails to charge any use of the mails in the execution of the scheme alleged as one to defraud; but after setting forth the scheme and its purpose there are allegations that defendants, "having devised the scheme or artifice hereinbefore fully described, and intending so to do, to defraud Emma V. Christensen, the defendant * * * did willfully, * * * and for the purpose of executing the aforesaid scheme or artifice to defraud," mail a writing styled an appeal, etc. That is sufficient. Of course, it cannot be said that on its face the paper called notice of appeal indicated any intention to defraud or was in execution of such an intention. But if one with corrupt intent has devised a scheme to defraud by getting money from people through deceit and misrepresentation, and for the purpose of carrying out a described scheme or artifice puts a writing in the mails, it is not material

whether the writing is valid. The mailing of any letter or writing for the purpose of executing the fraudulent scheme is what the statute (section 215) makes an element of the offense. United States v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548. As said by the Supreme Court in Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709, "The significant fact is the intent and purpose." They are questions for the jury.

[3] Nor is the pleading defective on the ground that it is manifest from the indictment that there was an "intrinsic impossibility" of bringing the prosecution of the claims within the scope of the fraudulent scheme alleged. If, as alleged, defendant falsely pretended to certain persons that preference rights to any of the lands described could be had through the Interior Department, by means of applications made through defendants and moneys paid to them, and if it was promised that moneys paid would be refunded if there was failure to get title within a certain time, whereas in fact, as defendants well knew, no preference rights could be secured from the Department of the Interior by virtue of such applications, and defendants knew the applicants would receive nothing of value for the money paid to defendants, and defendants had no intention of repaying the money which applicants were induced to pay to defendants, the scheme was clearly within the scope of the main allegations of the indictment. The statute does not make the guilt or innocence of one who devises such a scheme dependent upon its actual success.

It is wholly unsound to say that the court should hold that the land law was so firmly established that the representations made by defendants were "braggings," and would be unavailing to deceive any one and would be censurable merely because they were silly. The court cannot say the plan was absurd in its outline or contemplated steps. Schemes to defraud are often devised and carried out by designing men, who make representations which seem transparent to some people; yet it is astonishing how many credulous ones are induced to believe in the alluring promises of wealth and part with money upon the faith of the representations.

[4] Plaintiffs in error argue that an erroneous statement concerning a point of law is not indictable. If such a statement is honestly made, of course, no criminal charge will stand; but if there is a willful misstatement, made deliberately and with intent to deceive, and with a purpose to perpetrate a fraud, it is plain the statement may become an essential element in crime. It is a misunderstanding of the indictment to argue that it should be read as a charge that defendants considered that in point of law the regulations of the Land Office were unwarranted, and that defendants showed confidence that the courts would declare the law as defendants construed it. No construction of the pleading can ignore the elements of criminal intent and false representations and deceit which are the significant things alleged. The Department of the Interior may have been in error in respect to its regulations concerning applications for some classes of the lands described, and it may have been entirely lawful for defendants to decline to follow the regulations of the department, yet if defendants with

corrupt intent made the misrepresentations alleged, and with the evil purpose set forth devised the scheme to defraud, well knowing that preference rights could not be obtained through the Interior Department to acquire the lands referred to, they were guilty, provided always they used the mails as alleged. United States v. Comyns, 248 U. S. 349, 39 Sup. Ct. 98, 63 L. Ed. 287; Byron v. United States, 259 Fed. 371, 170 C. C. A. 347.

[5] Error is assigned to an instruction to the jury wherein the court commented upon the decision in Hoover v. Salling, 110 Fed. 43, 49 C. C. A. 26, decided in 1901, by saying that it had been there held that the rules and regulations of the Department of the Interior as applied in that case were contrary to law, but that a filing had been accepted by the Land Office and the applicant therefor had initiated a right, and when that right was subsequently denied by the Land Office and a patent was granted to another person the fact that his application had been accepted gave him a standing in a court of equity, and that in that case he was the only party who had such a right, and that in a court of equity it was held that under all the circumstances the ruling was inoperative as against his claim. The contention is that the court should have granted the request to modify the instruction by stating that, if the application is made, whether or not allowed by the department, if under the law it should be allowed and is rejected, the successful applicant may bring an action in court as though his application were allowed in the first instance. Modification was denied, and in denying it we find no error.

The instructions explained the general character of the rules of the Interior Department, and the difference between a department rule to be enforced by the department and a penal statute to be enforced by the courts, and the court charged that under the rules of the Land Department applicants referred to in this case could not obtain preferential or vested rights to the lands applied for by filing their applications for the purchase of the same in the local land office, and that such applicants could not and did not thereby acquire any right to institute suits in equity to set aside patents which might be issued to other persons for the lands which the applicants applied for, and have the holders of such patents declared trustees for them; that under the department rules applicants for timber and stone entries had to inspect land applied for personally before filing; and that with the question of the reasonableness of such a rule the jury had no concern, for the rule had the force of law until set aside or annulled. Inasmuch as there was no proof of any right in the defendant to get title through the Interior Department, modification was properly refused. The case was tried under an allegation of the indictment that defendants represented that they would obtain title to these lands from the Department of the Interior, not that they had obtained title for the applicants.

[6] A witness, Canfield, was permitted to testify over objection of defendants to certain representations made in his presence by defendants to one Shull, named as one of the "victims" in the indictment, concerning land Shull had applied for. The testimony was competent, even though Shull was not called.

It is unnecessary to go further into detail. The more important points are sufficiently covered by what we have said, and upon consideration of the whole record we are led to the conclusion that the case is free from error of law and that the verdict of the jury must be sustained.

Affirmed.