**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Jeremiah P. BUCKLEY, Ellsworth B. Sargent, Washington Water Power Co., and Sargent-Tyee Construction Co., Defendants-Appellees.**

No. 81–1597.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1982.

Decided Oct. 8, 1982.

894

Michael P. Ruark, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellant.

Arthur Harrigan, Seattle, Wash., argued, for defendants-appellees; W. A. Helsell, Seattle, Wash., G. W. Akers, Payton Smith, Seattle, Wash., on brief.

Before KILKENNY, HUG, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

The Government appeals the dismissal of an indictment of one count of mail fraud in violation of 18 U.S.C. § 1341. The district court dismissed the indictment on the ground that the Government had not alleged, or shown that it could prove, that a lobbyist disclosure form, mailed by appellee Washington Water Power Company ("WWPC"), contained false information. Because the indictment provided a minimally adequate description of the charge sufficient to enable preparation of a defense and a plea of double jeopardy, we reverse.

## FACTS

In January 1981 the grand jury indicted the appellees on one count of mail fraud.[1] The mail fraud charge alleged a money-washing scheme that operated from 1972 to 1976, in part to avoid a state law requiring disclosure of contributions to state legislators. As of 1974, state law required that both lobbyists and their employers report lobbying expenditures. Wash.Rev.Code §§ 42.17.170, 42.17.180.

The indictment alleged that Buckley distributed $15,000 to state legislators on behalf of WWPC after receiving it in early June 1975. The indictment alleged that Buckley filed reports from January 1973 to January 1976 in which he "intentionally failed to disclose the money paid to him in accordance with the scheme described in paragraph 2 of this indictment[2] and subse-

[1]. The Government also indicted two of the appellees, Buckley and Washington Water Power Company, on one count of obstruction of justice. This count was not dismissed and is not in issue on appeal.

[2]. Paragraph 2 of the indictment summarizes the charge:

2. It was part of the said scheme and artifice that JEREMIAH P. BUCKLEY, ELLSWORTH B. SARGENT, WASHINGTON WATER POWER COMPANY, SARGENT-TYEE CONSTRUCTION COMPANY, and Robert A. Perry entered with one another into a corrupt relationship in which each of them would and did act with intent to benefit himself and other defendants, directly and indirectly, through the use of fraud and de-

ception. It was further part of the scheme to defraud that, during the spring 1972, Robert A. Perry, ELLSWORTH B. SARGENT, and JEREMIAH P. BUCKLEY, in order to circumvent the requirements of Washington State's public disclosure law (Initiative 276) which became effective January 1, 1973, developed a plan to have WASHINGTON WATER POWER COMPANY award certain day crew contracts to SARGENT–TYEE CONSTRUCTION COMPANY and, in return, SARGENT–TYEE CONSTRUCTION COMPANY would kick back a portion of the proceeds to WASHINGTON WATER POWER COMPANY after first laundering the money through Sam Lee of Hong Kong. Thereafter said money was returned to WASHINGTON WATER POWER COMPANY for undisclosed

quently distributed by JEREMIAH P. BUCKLEY to members of the Washington State Legislature on behalf of WASHINGTON WATER POWER COMPANY." The only allegation of use of the mails in furtherance of the alleged fraudulent scheme is contained in the 28th and final paragraph of the indictment:

On or about April 1, 1976, within the Western District of Washington, JEREMIAH P. BUCKLEY, ELLSWORTH B. SARGENT, WASHINGTON WATER POWER COMPANY, and SARGENT-TYEE CONSTRUCTION COMPANY, the defendants herein, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, knowingly caused to be delivered by mail, according to the direction thereon, an envelope addressed to the "Public Disclosure Commission, 403 Evergreen Plaza, 711 Capitol Way, Olympia, Washington 98504" containing Public Disclosure Commission Form L-3, Lobbyist Employer's Report, for the year 1975, from WASHINGTON WATER POWER COMPANY.

The district court granted in part the defendants' motion for a bill of particulars, including a request for further information about paragraph 28 of the indictment. The Government provided the following information relevant to paragraph 28:

The L-3 filed by Washington Water Power Corporation for the year 1975 failed to report any of the money received from Robert A. Perry and spent on behalf of Washington Water Power Corporation by Jeremiah Buckley.

The defendants moved for dismissal of the mail fraud count. The court granted the motion on the ground that the indict-

payments to members of the Washington State Legislature for the purpose of furthering the legislative interests of WASHINGTON WATER POWER COMPANY. These payments would then be intentionally omitted from the publicly filed disclosure statements required to be filed under the public disclosure statute, thereby concealing those payments from the voters of the State of Washington.

**3.** Before trial, these corollary purposes of an indictment are generally met if the indictment

ment and Bill of Particulars did not "establish that any payments to any particular legislators made by Buckley in 1975 were not reported on the Form L-3 filed on April 1, 1976." The court found that without an explicit allegation that Buckley made payments to legislators in 1975 and intentionally omitted them from the Form L-3, there were insufficient facts supporting the allegation that the Lobbyist Form L-3 was false, and thus mailed in furtherance of the alleged scheme to defraud.

The Government appeals, pursuant to 18 U.S.C. § 3731.

## DISCUSSION

### I

### Standard of Review

 An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Two corollary purposes of an indictment are: (1) to ensure that the defendants are being prosecuted on the basis of the facts presented to the grand jury, and (2) to allow the court to determine the sufficiency of the indictment. *See Russell v. United States,* 369 U.S. 749, 768–71, 82 S.Ct. 1038, 1049–51, 8 L.Ed.2d 240 (1962); *United States v. Bohonus,* 628 F.2d 1167, 1173 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980); *United States v. Cecil,* 608 F.2d 1294, 1296–97 (9th Cir. 1979); *United States v. Keith,* 605 F.2d 462, 464 (9th Cir. 1979).[3]

adequately informs the defendant of the charge to enable him to defend himself and plead double jeopardy. *See, e.g., Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. at 2907; *United States v. Chenaur,* 552 F.2d 294, 301 (9th Cir. 1977). The instant indictment satisfies these corollary purposes. After trial, when the theory on which the Government has obtained a conviction is clear, these corollary purposes assume additional importance. *See, e.g., United States v. Stewart Clinical Laboratory,* 652 F.2d 804, 807 (9th Cir. 1981); *United States v. Gordon,* 641 F.2d 1281, 1285–87 (9th Cir.) *cert.*

██ Indictments alleging a scheme to defraud must provide sufficient facts to fulfill the purposes of an indictment. *See United States v. Cecil,* 608 F.2d at 1297 (citing with approval *United States v. Curtis,* 506 F.2d 985 (10th Cir. 1974), which held a mail fraud indictment invalid for failure to identify with particularity the nature of the alleged scheme). Yet, the issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case. *United States v. Thordarson,* 646 F.2d 1323, 1337 & n.25 (9th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 601, 70 L.Ed.2d 591 (1981).

██ The allegations of the indictment are presumed to be true. *Boyce Motor Lines v. United States,* 342 U.S. 337, 343 n.16, 72 S.Ct. 329, 332 n.16, 96 L.Ed. 367 (1952). The Government need not allege its theory of the case or supporting evidence, but only the "essential facts necessary to apprise a defendant of the crime charged." *United States v. Markee,* 425 F.2d 1043, 1047–48 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). We review *de novo* the sufficiency of the indictment. *See United States v. Bohonus,* 628 F.2d at 1173; *United States v. Chenaur,* 552 F.2d at 301.[4]

## II

### Fraudulent Scheme

██ The essential elements of mail fraud under 18 U.S.C. § 1341 are: (1) a scheme to defraud; and (2) a knowing use of the mail to execute the scheme. *United States v. Kaplan,* 554 F.2d 958, 965 (9th Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). The appellees contend that the alleged scheme was not a scheme to defraud under the statute, relying on *United States v. Dixon,* 536 F.2d 1388 (2d Cir. 1976). In *Dixon,* the court held that nondisclosure by a corporate official of certain loans in violation of SEC regulations was not a scheme to defraud because the shareholders did not rely on the disclosure regulations, and the nondisclosure was not intended to secure money or property in a fraudulent manner. *Id.* at 1398–400. In contrast, the Government alleges that the defendants here did not disclose all of their contributions to state legislators in violation of a state statute for the purpose of hiding contributions that were intended to influence the officials improperly.

Fraudulent schemes include those that are "contrary to public policy or which fail to measure up to the 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.'" *United States v. Bohonus,* 628 F.2d at 1171.

---

*denied,* 454 U.S. 859, 102 S.Ct. 312, 70 L.Ed.2d 156 (1981).

Because an indictment must be returned by the grand jury, a bill of particulars that may give the defendants adequate notice of the charge against them cannot save an invalid indictment. *Russell v. United States,* 369 U.S. at 770, 82 S.Ct. at 1050.

4. The rule that indictments that are challenged after trial are liberally construed in favor of validity, *see, e.g., United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir. 1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977), does not apply to this case where the defendants timely challenged the indictment before trial. In 1932 the Supreme Court left open the question whether an indictment should be read more strictly before trial than after trial. In *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), the Court upheld an indictment for mail fraud that failed explicitly

to allege delivery of a letter in furtherance of a fraudulent scheme, because that fact could be presumed from the indictment's allegations that the letter was placed in the mail. The Court stated, however, that it was deciding only that the "loosely and inartificially drawn" indictment was sufficient, in the absence of a showing of prejudice, after conviction; and that it was not "deciding that the indictment would not have been open to some form of challenge at an earlier stage of the case". *Id.* at 433, 52 S.Ct. at 419.

Neither the Supreme Court nor our circuit has explicitly answered this question. It appears that we have conducted a searching *de novo* review of an indictment dismissed before trial on sufficiency grounds. *See, e.g., United States v. Inryco, Inc.,* 642 F.2d 290, 294–95 (9th Cir. 1981), *cert. dismissed,* 454 U.S. 1167, 102 S.Ct. 1045, 71 L.Ed.2d 324 (1982). We follow this procedure here.

In *Bohonus*, we concluded that "depriving an employer of one's honest services and of its right to have its business conducted honestly can constitute a 'scheme to defraud' under § 1341." *Id.* at 1171–72. *See also United States v. Louderman*, 576 F.2d 1383, 1387–88 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978) (scheme to gather private information by deception was fraudulent).

■ In light of *Bohonus* and *Louderman*, we hold that the Government adequately alleged a "scheme to defraud" Washington citizens of their statutory right to know who made what political payments to whom, and a knowing use of the mails to further the scheme in violation of the mail fraud statute.

### III

#### Use of the Mail

The district court concluded that the indictment would have sufficiently alleged use of the mails to execute a scheme to defraud if it had alleged that WWPC had filed a *false* Lobbyist Employer's Report in 1976 that did not disclose payments to legislators.

The Government concedes that "the only way [the disclosure form] could be in execution or furtherance [of a scheme to defraud] is if it were false." It argues that it was not necessary for it to allege that the report was false, and insists that it was sufficient for it to allege that the mailing of the report was for the purpose of executing the scheme. It contends that the allegation of a false mailing is evidentiary in nature and relates only to its theory of the crime, not to the sufficiency of the indictment. The Government contends that it need not explicitly state that WWPC filed a false form by failing to report 1975 payments to legislators because it implied that fact when it alleged a money laundering scheme in 1975, payments to legislators as a result of that scheme, and the mailing of a Lobbyist Employer's Report for the year 1975 in furtherance of the scheme. We agree.

■ Because the indictment implicitly alleged the falsity of the disclosure report, it was clear enough to give the defendants notice of the crime charged and to allow them to plead double jeopardy. *See United States v. Castor*, 558 F.2d 379, 385 (7th Cir. 1977), *cert. denied*, 434 U.S. 1010, 98 S.Ct. 720, 54 L.Ed.2d 752 (1978) (Government need not allege evidentiary facts sufficient to prove its allegation that mailings were made in furtherance of a fraudulent scheme). The Government's allegation that the mailing of the disclosure form was in execution of the scheme to make undisclosed payments to legislators referred to that part of the indictment that alleged that the mailed disclosure form falsely failed to disclose such payments. The indictment in paragraph 2 stated:

> Thereafter [the money laundered through Hong Kong] was returned to Washington Water Power Company for undisclosed payments to members of the Washington State Legislature for the purpose of furthering the legislative interests of Washington Water Power Company. These payments would then be intentionally omitted from the publicly filed disclosure statements required to be filed under the public disclosure statute . . . .

The indictment concluded in paragraph 28 by stating that the defendants, "for the purpose of executing aforesaid scheme and artifice and attempting to do so, knowingly caused to be delivered by mail . . . [a] Public Disclosure Commission Form L–3, Lobbyist Employer's Report, for the year 1975, from Washington Water Power Company."

■ Although a mailing need not be false to be in furtherance of a scheme to defraud, *see United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981); *Byron v. United States*, 273 F. 769, 771–72 (9th Cir.), *cert. denied*, 257 U.S. 653, 42 S.Ct. 94, 66 L.Ed. 418 (1921), the parties do not dispute that the only way the mailing of the disclosure form could be in furtherance of the scheme to make secret political payments is if it falsely failed to report such payments as alleged in paragraph 2 of the indictment. What the district court believed that the indictment failed to do was to include any

facts supporting the allegation that the Lobbyist Form L-3 was mailed in furtherance of the alleged scheme. It is true that the Government did not specifically allege that Buckley made payments to legislators in the year 1975 and that these payments were intentionally omitted from the Lobbyist Form mailed in 1976. But an indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense. *See United States v. Inryco, Inc.,* 642 F.2d at 294; *United States v. Anderson,* 532 F.2d 1218, 1222 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976).

In this case, the crucial allegation that Buckley made payments to legislators in 1975 and intentionally omitted them from the disclosure form was necessarily implied in the three sentences of the indictment quoted above. In the first crucial sentence of the indictment, at paragraph 2, the Government alleged that WWPC had money set aside for payments to legislators. The second crucial sentence alleged that these payments would be intentionally omitted from the disclosure statement. Although the indictment does not explicitly allege that any money was delivered to any legislators, this fact is necessarily implied. There is no way that payments could be intentionally omitted from the disclosure statement if none were ever made. Moreover, the making of such payments is not an element of the crime. *Cf. United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953) (although an essential element of the crime of perjury is that the defendants be administered an oath authorized by law, indictment was sufficient when it alleged that the defendants had "duly taken an oath;" allegation that the person giving the oath was authorized to give it was unnecessary.)

The third crucial sentence of the indictment, at paragraph 28, alleges that in 1976 WWPC mailed the disclosure form for the year 1975 in furtherance of the alleged scheme. Although the indictment fails to allege explicitly that WWPC made payments to legislators in 1975, that fact is necessarily implied when these three sentences are read together. The only way that the 1975 disclosure form could have been mailed in furtherance of the alleged scheme, as charged in paragraph 28, is for WWPC intentionally to omit the payments to legislators from the disclosure statement, as charged in paragraph 2. *Cf. Pipefitters Local Union v. United States,* 407 U.S. 385, 439 n.48, 92 S.Ct. 2247, 2276 n.48, 33 L.Ed.2d 11 (1972) (dictum) (reading allegations of an indictment together to draw inferences to determine sufficiency). Thus, the defendants had sufficient notice of the charged crime to prepare a defense and plead double jeopardy despite the fact that the indictment was lengthy, confusing, and largely irrelevant.[5]

■ It is immaterial that at a hearing about the sufficiency of the indictment, the Government conceded that it could not prove the omission in the 1976 Lobbyist Report of any specific payment to any specific legislator in 1975 and that the Government refused to make such specific allegations in the bill of particulars. It was possible for the Government to prove these payments to unknown legislators with circumstantial evidence, rather than direct evidence. Although the Government was reticent about its theory, it apparently wanted a jury to infer that because legislation important to WWPC passed by one vote in 1975 and WWPC had established a laundering scheme which put $15,000 in Buckley's hands in 1975, that Buckley must have given it to some unknown legislators in 1975 to influence their votes, and that consequently WWPC failed to disclose those 1975 payments in the 1976 Lobbyist Form.

---

5. Although Fed.R.Crim.P. 7(c) requires that the indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged," the courts have construed this language to require little more than that the indictment give the defendants sufficient notice of the crime. *See United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Root,* 366 F.2d 377, 384 (9th Cir. 1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967).

Although the Government's theory appears weak, and a judgment of acquittal may be granted if the Government presents inadequate evidence at trial, the weakness of the Government's case is irrelevant to the sufficiency of the indictment. *See United States v. Thordarson,* 646 F.2d at 1337 n.25. At this stage of the proceedings it is unknown whether the Government has overwhelming circumstantial evidence to support its theory. The indictment stage of the proceedings is not the appropriate time to require the Government to present its proof. *See United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–175, 9 L.Ed.2d 136 (1962).[6]

■ In charging mail fraud, the Government is required only to make specific factual allegations concerning the mailing allegedly in furtherance of the alleged scheme to defraud. *See United States v. Livengood,* 427 F.2d 420, 423 (9th Cir. 1970) (mail fraud indictment couched in the language of the statute was sufficient and met the requirements of Fed.R.Crim.P. 7(c) where the alleged schemes were particularized in some detail). We hold that the Government made barely sufficient allegations in this mail fraud indictment.

## IV

### Other Issues

The appellees contend that the mailing was "legally compelled" under *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), and thus not in execution of a fraudulent scheme. *Parr* involved

a situation where the legally compelled mailing was not made in furtherance of a scheme to defraud. In this case the Government alleges that the false mailing of the 1976 disclosure form was in furtherance of the scheme to make secret payments to legislators. *See United States v. Bagnariol,* 665 F.2d 877, 899 (9th Cir. 1981) (per curiam), *cert. denied,* —— U.S. ——, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). *Compare United States v. Curry,* 681 F.2d 406, 412 (5th Cir. 1982).

■ The Government contends that this case should be remanded for trial before a different judge, because the district court has indicated that it found the Government's case to be weak. We find this request to be frivolous in light of the Government's concession that the district court has shown no personal bias. *See United States v. Doe,* 655 F.2d 920, 929 (9th Cir. 1980). Not only was it proper for the court to express its opinion about the Government's case; we note our agreement with the district court's preliminary assessment of the weakness of the Government's case. We hold only that the district court erred in dismissing the indictment too early in the criminal proceedings. If the Government does not offer substantial evidence to support its theory by the time it rests its case, the district court can properly grant a motion for acquittal.

### CONCLUSION

Because the indictment implicitly alleged the falsity of the disclosure report and was

---

6. There is some indication in the record that the district court dismissed the indictment in part because it believed that it would have to grant a motion for acquittal at the end of the Government's case. Buckley contends that a judgment of acquittal is proper before the Government has presented its case when it is clear that the Government's proof is insufficient. *See United States v. Ubl,* 472 F.Supp. 1236 (N.D. Ohio 1979) (motion for acquittal granted in the middle of the Government's case after it was apparent that Government could not introduce sufficient evidence); *United States v. Maryland Cooperative Milk Producers, Inc.,* 145 F.Supp. 151 (D.D.C.1956) (motion for acquittal granted after Government stipulated to certain facts that precluded convic-

tion); *United States v. Dietrich,* 126 F. 676, 677–78 (C.C.D. Neb. 1904) (directed verdict for defendant proper after Government admitted a fact during its opening statement that precluded conviction). We need not decide the validity of these cases in light of *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 570 n.8, 97 S.Ct. 1349, 1354 n.8, 51 L.Ed.2d 642 (1977) (dictum that a motion for judgment of acquittal can be entertained, at the earliest, after the evidence on either side is closed). In the instant case, unlike the *Ubl* line of cases, the Government has not conceded that it could not prove the falsity of the disclosure form, nor stipulated that it had provided the court and the defendants with all its evidence on this issue.

clear enough to give the defendants notice of the crime charged and to allow them to plead double jeopardy, we reverse the dismissal of the indictment.

REVERSED.