**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas A. LANE, Defendant-Appellant.**

**No. 84–3082.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 1, 1985.

Decided July 16, 1985.

Robert L. Zimmerman, Lorraine D. Gallinger, Asst. U.S. Attys., Billings, Mont., for plaintiff-appellee.

Charles F. Moses, Stephen C. Moses, Billings, Mont., for defendant-appellant.

Before WRIGHT, KENNEDY, and ANDERSON, Circuit Judges.

KENNEDY, Circuit Judge:

Thomas Lane appeals his conviction for conspiracy to defraud the United States by dishonest administration of a program under Title IV(A) and Title XX of the Social Security Act, 42 U.S.C. §§ 601–619, 1397, in violation of 18 U.S.C. § 371 (1982). We affirm.

Social Security Act Title IV(A) and Title XX funds are distributed to states to train state employees providing community services. During the period covered in the indictment, the State of Montana contracted with the University of Montana to administer its Title IV(A) and Title XX funds. Morton Arkava, Chairman of the University's Social Services Department, established the budget for Montana's training program, contracted with consultants to provide training workshops for the program, purchased instructional manuals for the workshops, and otherwise authorized the expenditure of Montana's grant funds.

In Idaho, the Department of Health and Welfare and certain certified state universities administered Title IV(A) and Title XX funds. Ronald Paulsen, Chief of the Department's Bureau of Training, was responsible for establishing the budget for Idaho's training program and authorizing the expenditure of Idaho's grant funds. In mid-1977, Arkava and Paulsen began hiring each other as outside consultants and purchasing instructional manuals from each other for the training programs with the understanding that they would maintain an equal gross dollar volume: for every dollar of work Arkava sent to Paulsen, one was returned by Paulsen to Arkava. Each prepared his bills for consulting services and instructional manuals by fabricating expenditures and costs to reach predetermined dollar amounts. Some of the instructional manuals for which the states were billed had been plagiarized.

The competitive bidding requirement at the Idaho Department of Health and Welfare made it increasingly difficult for Paulsen to award a large number of contracts to Arkava without raising suspicion. The two asked Thomas Lane, Chairman of the Department of Sociology, Anthropology, and Social Work at Idaho State University, to participate in their dollar-for-dollar scheme. As Project Director for the Title IV(A) and Title XX funds administered by the University, Lane could funnel more Idaho grant money to Arkava simply by authorizing contracts for his services. In return, Arkava would authorize contracts, equal in amount on a gross dollar basis, for Lane's services.

After a jury trial, Lane was convicted of conspiracy to defraud the United States Government and sentenced to five years probation with a condition that he make restitution to the government, half in cash, half in community services.

■ Lane's first contention on appeal is that the trial court's refusal to grant a continuance for more than four days violated his due process rights and his right to effective assistance of counsel. The denial of a motion for a continuance will not be reversed absent a clear abuse of discretion. *Morris v. Slappy*, 461 U.S. 1; 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *United States v. Clevenger*, 733 F.2d 1356, 1359 (9th Cir.1984). To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense. *United States v. Mitchell*, 744 F.2d 701, 704–05 (9th Cir.1984); *United States v. Maybusher*, 735 F.2d 366, 369 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); *Clevenger*, 733 F.2d at 1360.

■ Lane claims the 66-day pretrial period was inadequate because the case was complicated and his counsel's own schedule prevented him from adequately preparing for trial. With the four-day continuance, however, Lane's defense counsel had adequate time prior to trial to review the statements of the government's witnesses. *See United States v. Jones*, 612 F.2d 453, 455 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980). Further, Lane has not specified which witnesses his defense attorney would have interviewed, which documents and exhibits he was unable to examine, or what defenses he might have explored. *See Mitchell*, 744 F.2d at 705. As Lane has failed to demonstrate actual prejudice, the conviction may not be reversed on this ground.

Count 1 of the indictment charged that Lane, Arkava, Paulsen, and other named persons had violated 18 U.S.C. § 371, which, in pertinent part, broadly prohibits conspiracies to "defraud the United States, or any agency thereof in any manner or for any purpose." Specifically, Count 1 charged Lane with participating in a conspiracy to defraud the United States of its right to have the grant program under Title IV(A) and Title XX of the Social Security Act administered honestly and fairly. Count 1 also alleged that one objective of

the conspiracy was to present the United States with false claims for money. The indictment described the means used by the conspirators to defraud the United States: presenting claims for conducting training workshops and writing curricula knowing that a portion of the amount claimed and received was not for the services or materials provided, and receiving kickbacks for authorizing the purchase of instructional material. The overt acts committed in furtherance of the conspiracy were then set forth, with the role of the individual conspirators and their dummy corporations, dates, work performed, plagiarized material, invoices submitted, and amounts paid specified in great detail.

Lane attacks the adequacy of the allegations in the indictment and their purported vagueness. He contends first that Count 1 failed to charge conduct amounting to criminal conspiracy and, second, that the language in the indictment setting forth the elements of the crime was unconstitutionally vague. Reviewing the sufficiency of the indictment under the *de novo* standard, *United States v. Wellington*, 754 F.2d 1457, 1462 n. 2 (9th Cir.1985); *United States v. Buckley*, 689 F.2d 893, 897 & n. 4 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), we disagree.

■ The Supreme Court has held that the conspiracy to defraud element in 18 U.S.C. § 371 reaches "any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government." *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966). The term "to defraud" as used in section 371 not only reaches property or pecuniary loss through the use of a deceptive scheme, but also protects the integrity of the United States, its agencies, programs, and policies. *See United States v. Johnson*, 383 U.S. 169, 172, 86 S.Ct. 749, 751, 15 L.Ed.2d 681 (1966); *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924); *United States v. Everett*, 692 F.2d 596, 599 (9th Cir.1982), *cert. de-*

*nied,* 460 U.S. 1051, 103 S.Ct. 1498, 1502, 75 L.Ed.2d 930 (1983).

The conspiracy charge included allegations that the conspirators had submitted false claims for money against the United States; such conduct falls within the proscription of section 371. *See Dennis,* 384 U.S. at 860–61, 86 S.Ct. at 1843–44; *United States v. Beasley,* 550 F.2d 261, 270 (5th Cir.), *cert. denied,* 434 U.S. 863, 938, 98 S.Ct. 195, 427, 54 L.Ed.2d 138, *reh'g denied,* 434 U.S. 961, 98 S.Ct. 496, 54 L.Ed.2d 323 (1977). At trial the government proceeded on the theory that the criminal conspiracy also included an agreement between Arkava, Paulsen, and Lane that each would use his status as Project Director at different state universities and state agencies to ensure that the others entered into contracts financed by the federal government, that their consulting fees would be set at an amount which allowed them to skim profits, and that each would receive equal dollar payments. Involvement in a scheme for financial quid pro quos in federally financed contracts or to receive unjust enrichment charges a violation of 18 U.S.C. § 371. *See United States v. Burgin,* 621 F.2d 1352, 1356–57 (5th Cir.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980).

We also reject Lane's contention that the indictment failed to state the elements of the crime charged with sufficient clarity. An indictment must provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense and plead double jeopardy at a later prosecution. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Two corollary purposes of an indictment are to ensure that the defendant is being prosecuted on the basis of facts presented to the grand jury and to allow the court to determine the sufficiency of the indictment. *United States v. Morlan,* 756 F.2d 1442 (9th Cir.1985); *Buckley,* 689 F.2d at 896; *United States v. Bohonus,* 628 F.2d 1167, 1173 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). To serve each of these functions, the indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged. *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962); *Bohonus,* 628 F.2d at 1173. An indictment charging a conspiracy under 18 U.S.C. § 371 should allege an agreement, the unlawful object toward which the agreement is directed, and an overt act in furtherance of the conspiracy. *United States v. Geise,* 597 F.2d 1170, 1177 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Since conspiracy is the gist of the crime, the indictment need not state the object of the conspiracy with the detail that would be required in an indictment for committing the substantive offense. *United States v. Tavelman,* 650 F.2d 1133, 1137 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982); *United States v. Inryco, Inc.,* 642 F.2d 290, 295 (9th Cir.1981), *cert. denied,* 454 U.S. 1167, 102 S.Ct. 1045, 71 L.Ed.2d 324 (1982); *Geise,* 597 F.2d at 1178 (citing *Wong Tai v. United States,* 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927)).

Although lengthy and confusing, the indictment in this case was adequate. While the indictment lacked explicit allegations of the arrangement for equal dollar payments, conspiracy to defraud the United States was alleged, and the recitation of overt acts was sufficient to apprise Lane of the facts upon which the charges were based and what the government would attempt to prove at trial. Therefore, the indictment was sufficient, and the district court did not err when refusing to dismiss it.

At the close of the prosecution's case, Lane moved to dismiss the indictment on the ground that the government failed to prove knowing participation in the conspiracy. The district court denied the motion. Lane argues that the record is devoid of any evidence that he was either aware of or participated in Arkava's and Paulsen's scheme to defraud the government.

In determining the sufficiency of the evidence to support a conviction, the relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Kiriki,* 756 F.2d 1449, 1453 (9th Cir.1985). Lane concedes the government proved Arkava and Paulsen were engaged in a scheme to defraud the government, so the question becomes whether Lane was a member of the conspiracy. Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation. *United States v. Bibbero,* 749 F.2d 581, 587 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985); *United States v. Dunn,* 564 F.2d 348, 357 (9th Cir.1977).

Viewing the evidence in the light most favorable to the government, we have no difficulty concluding the evidence was sufficient to convict Lane as a member of the conspiracy. Both Paulsen and Arkava testified that they met with Lane and outlined the dollar-for-dollar agreement, told Lane of Paulsen's difficulty in funneling a sufficient number of contracts to Arkava, described the use of dummy corporations as a way to hide their activities, and asked Lane to join for his own profit. They testified that after Lane joined the scheme, the three held meetings to tally up the gross dollar volume each had received and to discuss adjustments in upcoming contracts. A tally sheet, prepared by Lane for one such meeting, was introduced into evidence. The jury heard testimony that Arkava told Lane how much to charge for each of his training workshops, and that these charges bore no relation to actual costs or value of services, but rather were based on the amount of grant money available and how much Arkava thought he could justify if necessary. Finally, Arkava and Paulsen testified that after the Health and Human Service auditors began investigating the grant program, they met with Lane in Sun Valley to make certain their stories were consistent. Incriminating documents that Lane brought to this meeting, including a written rationale to justify his expenditures to federal investigators, were introduced into evidence. This is ample evidence to support the finding that Lane knew of the existence of the conspiracy and, acting with that knowledge, joined and participated in the conspiracy.

AFFIRMED.