21 F.3d 940
 62 USLW 2687, 28 Fed.R.Serv.3d 1510
 Angel MARTEL, Plaintiff-Appellant,
v.
COUNTY OF LOS ANGELES, Sherman Block, Sheriff of Los Angeles
County, Elias Cuevas, Harry DeLong, Richard Mariadiaga, Mark
Shaugnessy, Herb Howland, Jeffrey Lammers, Margarito Robles,
and Frank Yanes, Defendants-Appellees.
 No. 91-56268.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1993.
Decided April 12, 1994.
 
 Thomas E. Beck, Los Angeles, CA, for plaintiff-appellant.
 Douglas J. Collodel, Morris, Polich & Purdy, Los Angeles, CA, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: FARRIS, William A. NORRIS, and REINHARDT, Circuit Judges.
 Opinion by Judge REINHARDT; Dissent by Judge NORRIS.
 OPINION
 REINHARDT, Circuit Judge:
 
 
 1
 The district judge in this case is an exceptionally able, hard-working, and conscientious jurist. However, he enforces a procedure widely known as the "rocket docket." His standard practice is to set cases for trial within three months of the filing of the answer. He adhered to that policy in this Sec. 1983 police brutality action. As a result, the plaintiff, Angel Martel, was forced to go to trial before he had any opportunity to conduct meaningful discovery. Martel appeals from the jury's verdict in favor of the defendants. Because we conclude that the district judge's refusal to grant any continuance constituted an abuse of his discretion, and because his enforcement of his "rocket docket" policy violated the Local Rules of the Central District of California, we reverse.
 
 I.
 
 2
 Angel Martel was diagnosed as paranoid schizophrenic following a brain injury suffered in 1978. On June 6, 1990, while at his home in Pico Rivera, California, he experienced delusions that someone was attempting to break into his car. He took a shotgun and went into his backyard. Martel's brother-in-law, Henry Ortega, followed him into the yard and attempted to disarm him. In the struggle, the gun discharged without causing injury. Martel's wife, Ester, heard the shot and called 911 for assistance. Eight sheriff's deputies responded to the call and attempted to restrain Martel. Martel alleges that the deputies entered the backyard, removed the shotgun from the immediate area, and subdued him. He alleges that, after he surrendered, the deputies beat him with flashlights and batons, kicked him, and shocked him with a taser. Martel claims that the beating left him with a broken left kneecap and right leg, as well as head lacerations.
 
 
 3
 On April 22, 1991, Martel filed suit against the County of Los Angeles, the L.A. County Sheriff, one named deputy sheriff, and several "John Doe" defendants. He sought damages under the federal civil rights statutes, as well as several state law causes of action. Two days after Martel filed his complaint, the district judge issued a copy of his standing order setting forth the procedures followed in his court. Although the local rules of the district court require a minimum of at least four months between service of the answer and a pretrial conference, the order stated:
 
 
 4
 This court strives to set trial dates as early as possible and does not approve of protracted discovery. EXCEPT FOR UNUSUALLY COMPLEX CASES, COUNSEL SHOULD EXPECT THE CASE TO GO TO TRIAL WITHIN THREE MONTHS OF THE FILING OF THE FIRST ANSWER.
 
 
 5
 Order of April 24, 1991, at 3. To emphasize the point, the order went on to state that "[c]ontinuances are rarely granted.... The Court sets firm trial dates and will not change them except for emergencies." Id. The defendants filed an answer on May 17, thus starting the clock under the district judge's standing order.
 
 
 6
 Martel initiated discovery immediately after bringing the suit. Because he did not know the identities of seven of the eight deputies who had subdued him, he served the county with interrogatories accompanying the complaint. These interrogatories sought the names of all of the possible defendants. The county responded on May 24, although Martel claimed that it had not provided the names of all of the defendants and had misidentified one.
 
 
 7
 At a mandatory status conference on June 24, the district judge scheduled the pretrial conference for August 26, and the trial for August 27, just over three months after the defendants filed their answer. As his trial preparation continued, Martel eventually discovered the names of all eight of the deputies involved in his case. Accordingly, on July 22 and August 12, he filed amended complaints, and eventually named seven additional deputies as defendants. Although he promptly served these new defendants with interrogatories and requests for admission, the responses to these requests were not due until after the August 27 trial date.
 
 
 8
 Because more time was necessary to complete essential discovery, Martel moved for a continuance on August 22. In addition to pointing out that the new defendants' responses to discovery requests were due only after the scheduled trial date, Martel's counsel claimed that the original defendants had not been cooperative in discovery. He stated that a motion to compel was pending and that it would likely not be heard until after the trial date. He also stated that he had been unable to depose any of the defendants because he was a sole practitioner and had been in trial nearly continuously since late May. The district judge denied the motion. Pursuant to the district judge's order, trial began on August 27, although Martel had not had an opportunity to depose any of the defendants. The jury returned a verdict in favor of the defendants. Because the jury determined that he had suffered no constitutional injury, the district judge dismissed Martel's Monell[1] claims against the county and Sheriff Block. Martel now appeals. The district court had jurisdiction pursuant to 28 U.S.C. Secs. 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 A.
 
 9
 The decision to grant or deny a continuance lies within the district judge's discretion. However, this discretion "is not without limits." Rios-Berrios v. I.N.S., 776 F.2d 859, 862-63 (9th Cir.1985). In determining whether a district judge has abused his or her discretion in refusing to grant a continuance, our precedents require us to consider four factors: the appellant's diligence in attempting to prepare his case for the originally-scheduled trial date; the likelihood that the grant of a continuance would have resolved the problem which led the appellant to seek a continuance; the inconvenience a continuance would have caused the court and the opposing party; and the extent to which the appellant might have suffered harm as a result of the district court's denial. United States v. 2.61 Acres of Land, 791 F.2d 666, 671 (9th Cir.1985) (citing United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir.1985)). Although all of the Flynt factors must be weighed against one another, we will not reverse absent a showing of prejudice. See id.
 
 
 10
 We conclude that the district judge abused his discretion in denying Martel a continuance and that this error requires reversal. Two of the Flynt factors clearly support our conclusion and require no extended discussion. First, it is clear that a continuance would have resolved the problem that impelled Martel to seek one. Martel moved for a continuance because he had not been able to depose any of the eight individual defendants, and because he had received responses to his written discovery requests from only one of them. Had the district judge moved back the trial date, Martel could have completed this necessary discovery. Second, a brief continuance for the completion of discovery would not have caused great inconvenience. Although any continuance might be said to cause some inconvenience, the defendants here could hardly have had a significant interest in proceeding to trial before they had responded to written discovery requests and been deposed. Nor is there anything in the record that shows that the work of the district court would have been disrupted by the delay. Moreover, even had such a showing been made, that would not affect our decision; for a continuance was necessary here only because of the district judge's decision to schedule the trial at a date that was too early to permit the parties to take reasonable discovery. It is also significant that the four month interval between the filing of the complaint and the trial in this case was substantially shorter than that in the average case. In the Central District of California in 1991 and 1992, the median time between filing of the answer and trial in civil cases was thirteen months. See Administrative Office of the United States Courts, 1992 Federal Court Management Statistics 129 (1992).
 
 
 11
 In denying the continuance, the district judge focused principally on the first Flynt factor: the extent of Martel's diligence in preparing for the scheduled trial date. In doing so, the judge ignored both the facts of this case and the realities facing individual plaintiffs in modern litigation. At the hearing on the motion for a continuance, the judge claimed that Martel's counsel was "very, very slow in getting a handle on this case." This statement apparently referred to the attorney's representation that he had calculated the exact amount of Martel's medical expenses for the first time earlier that afternoon. Yet, whether or not Martel's attorney was slow in calculating the damages (and we do not mean to suggest that he was), this issue was simply irrelevant to Martel's request for a continuance. Martel did not seek the continuance in order to evaluate evidence, such as the medical bills, which were already in his possession. By the time the judge heard the motion, Martel's counsel had already performed the necessary damage calculations, and there was no need to delay for this purpose. Rather, Martel sought the continuance in order to obtain information which was in the defendants' possession, and which the defendants were obliged to provide in discovery.
 
 
 12
 Although the district judge also asserted that Martel had "not initiated discovery," the record shows this characterization to be incorrect. At the time Martel served his original complaint, he served the defendants whose identities he knew with interrogatories and requests for admission. He also filed timely requests for document production. As he began to learn the identities of the other individual defendants and add their names to the complaint, Martel served them with discovery requests as well. Through no fault of Martel's, his motion to compel was not scheduled to be heard until after the trial date, and the responses of seven defendants to his discovery requests were not due until after trial either. To be sure, Martel had not deposed any of the defendants, but this was not the result of any lack of diligence on his part. Instead, it was the result of his attorney's quite busy trial schedule. As his attorney explained in a declaration in support of Martel's motion for a continuance:
 
 
 13
 I have been unable to depose any of the defendants in large part due to the fact that I have been in trial in this Court between May 21, 1991 to June 25th, the Superior Court between July 8 and July 26th and in a municipal criminal case last week [8/13 to 8/16] I started a 1987 civil case that had been continued 5 times before Judge Marshall today and this is expected to go to the jury September 6.
 
 
 14
 Declaration of Thomas E. Beck, August 21, 1991, at 5 (brackets in original).
 
 
 15
 It was improper for the district court to hold counsel's busy schedule against his client in this case. It is a basic reality of modern litigation that many plaintiffs, and especially those without financial means, must depend upon the assistance of attorneys with high-volume/low-margin practices if they are to have any skilled legal assistance at all. Many of these attorneys are sole practitioners. Plaintiffs therefore will sometimes be in the position in which Martel found himself here, having to compete with many other clients for his lawyer's time. By contrast, civil defendants (and especially large institutional clients like the County of Los Angeles) will normally not suffer from these problems. Defendants can usually engage firms with large rosters of attorneys and supporting staff. By virtue of the size of their business, many defendants can assure that counsel will place a priority on addressing their problems rather than those of other clients. Basic norms of equitable treatment dictate that plaintiffs not be penalized simply because they are represented by sole practitioners who are legitimately engaged in other trials. Accordingly, where counsel's busy trial schedule is the primary reason for a delay in trial preparation, a continuance should generally not be denied in the absence of a prior warning, an exploration of the legitimacy of counsel's conflicting engagements and the extent to which an accommodation of counsel's schedule would prejudice the opposing party or inconvenience the court, and consideration of alternative solutions. Here, the district judge's insistence on its standard three-month interval between the filing of the answer and the trial without carefully exploring the factual circumstances of the case with the parties was inconsistent with his duty to treat plaintiffs and defendants equally. Given the extensive written discovery in which Martel's attorney had already engaged, the relatively short interval between the filing of the complaint and the trial, and the frenetic work schedule engaged in by Martel's attorney, it was an abuse of discretion for the district judge to refuse to allow him sufficient time to depose the defendants.
 
 
 16
 Finally, we must consider the fourth Flynt factor, "the extent to which the appellant might have suffered harm as a result of the district court's denial." Flynt, 756 F.2d at 1359. In this case, the issue is easily resolved. The district judge's refusal to grant a continuance prevented Martel from deposing any of the defendants. The decision to force Martel to trial before he had received written discovery from seven of the defendants, and before he had deposed any of them, affected every aspect of the trial.[2] It manifestly prejudiced his ability to prepare and present his case. If Martel had obtained discovery from the defendants, he might well have been able to pursue additional investigative leads prior to trial. He might also have altered his plans for the presentation of his own witnesses and changed his strategy for cross-examining the county's. He might even have uncovered a new cause of action or a new theory on which he could prevail on one of his original claims. Most important, there is no way we can know how much of an impact the denial of discovery had on Martel's case. We simply cannot tell what kind of record he could have developed had he been able to obtain meaningful discovery. In such circumstances, we have recognized that it is both unfair and pointless to require a specific showing of the impact the district court's error had on the outcome of the proceeding. See Hays v. Arave, 977 F.2d 475, 479-81 (9th Cir.1992). Martel has satisfied the prejudice requirement by showing that the district court's refusal to grant a continuance denied him meaningful discovery.
 
 
 17
 An examination of our decision in United States v. Lane, 765 F.2d 1376, 1379 (9th Cir.1985), makes clear that Martel has shown sufficient prejudice to warrant reversal. In Lane, a criminal defendant appealed the district court's refusal to grant more than a four-day continuance so that he could complete his trial preparation. We held that Lane had failed to show actual prejudice, for two reasons. First, we concluded that the four-day continuance gave Lane's counsel "adequate time prior to trial to review the statements of the government's witnesses." Id. Second, we noted that "Lane ha[d] not specified which witnesses his defense attorney would have interviewed, which documents and exhibits he was unable to examine, or what defenses he might have explored." Id.
 
 
 18
 In this case, Martel has shown precisely the elements of prejudice which we found lacking in Lane. First, unlike the district judge in Lane the district judge here did not grant Martel any continuance--even one of four days--to complete his trial preparation. Not only did Martel never have any opportunity to review the government witnesses' statements prior to trial, he never even had the opportunity to obtain any statements. Second, and most important, Martel has "specified which witnesses his ... attorney would have interviewed [and] which documents and exhibits he would have examined." Had the district judge granted the continuance, Martel would have deposed all of the individual defendants, and he would have examined the interrogatories and requests for admission which had been served on the seven new defendants but which would not come due until after the August 27 trial date. Although we do not know what kind of case Martel actually put on at trial, we do know that his preparation for that trial was manifestly prejudiced. That is clearly sufficient to meet the Lane requirement.
 
 
 19
 We conclude that the district judge abused his discretion by adhering to the "rocket docket" policy in the face of Martel's request for time to complete discovery. Cf. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849-50, 11 L.Ed.2d 921 (1964) (stating that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay" can constitute an abuse of discretion). Because the denial of meaningful discovery clearly prejudiced Martel, we reverse and remand for a new trial following a sufficient discovery period.
 
 
 20
 While we sympathize with the district court's attempt to control its docket, and believe that district judges must have wide discretion to do so, in this instance the strict policy of rushing cases to trial within three months of the filing of the first answer severely prejudices the ability of parties to prepare their cases, and often falls most heavily on those of limited means. We agree with the Fourth Circuit's admonition issued nearly three decades ago: "Delay should be avoided to the extent that it is unnecessary or unreasonable but adequate time must be allowed for discovery of the facts and assembly of the proof." Freehill v. Lewis, 355 F.2d 46, 48 (4th Cir.1966).
 
 B.
 
 21
 There is another, independent basis for our conclusion that this case must be reversed. By setting the pretrial conference for approximately three months after the filing of the first answer, and setting the trial for the day after the conference, the district court violated the Local Rules of the Central District of California. These local rules provide for a specified minimum period (of over four months) between the service of the first answer and the pretrial conference. The district judge's standing order that "COUNSEL SHOULD EXPECT TO GO TO TRIAL WITHIN THREE MONTHS OF THE FILING OF THE FIRST ANSWER" conflicts squarely with the local rules.
 
 
 22
 C.D.Cal. Local Rule (Civil) 6.1 states that the parties are to hold an early meeting "[w]ithin twenty (20) days after service of the answer by the first answering defendant." C.D.Cal. Local Rule (Civil) 6.2 requires submission of a report to the court "[w]ithin fourteen (14) days after the Early Meeting." The district court may send notice of the pre-trial conference "no earlier than sixty (60) days after the Joint Report of Early Meeting required by Local Rule 6 is due to be filed with the Court." C.D.Cal. Local Rule (Civil) 9.2 (emphasis added). The same rule states that "[t]he Pre-Trial Conference shall be set for a date no earlier than sixty (60) days after the mailing of such notice." Id. (emphasis added). These rules appear to provide for a minimum of 154 days between service of the first answer and the pre-trial conference. Even assuming the district judge had the authority to waive the Early Meeting and Joint Report requirements, as he purported to do here, the local rules still require a minimum of 120 days between service of the first answer and the pre-trial conference.[3] Here, the district judge provided only 101 days between service of the first answer on May 17, 1991 and the pretrial conference on August 26, 1991. In doing so, he violated the Local Rules. This was error. When properly authorized and promulgated, local rules have the force of law. See Weil v. Neary, 278 U.S. 160, 169, 49 S.Ct. 144, 148, 73 L.Ed. 243 (1929). Accordingly, they are "binding upon parties and upon the court that promulgated them until they are changed by a majority of judges of the district." 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Sec. 3153 at 224 (1973). Where a district court's violation of its local rules affects "substantial rights," 28 U.S.C. Sec. 2111; accord Fed.R.Civ.P. 61, reversal is required.
 
 
 23
 Moreover, when a district judge's standing orders conflict with local rules, the judge violates the Federal Rules of Civil Procedure as well. Under Fed.R.Civ.P. 83, which authorizes local rules, district judges "may regulate their practices in any manner not inconsistent with these [Fed.R.Civ.P.] rules or those of the district in which they act." Fed.R.Civ.P. 83; see also C.D.Cal. Local Rule (Civil) 30.3 ("If no parallel or analogy exists, then the Court may proceed in any lawful manner not inconsistent with these rules and the F.R.Civ.P."). This portion of Rule 83 was amended in 1985 "to make certain that standing orders are not inconsistent with the Federal Rules or any local district court rules." Fed.R.Civ.P. 83 1985 amendment advisory committee's note. The amendment was designed to preclude arbitrary action by individual judges in derogation of the rights afforded litigants by local court rules.[4] A "rocket docket" policy that affords parties less time than they are entitled to under the local rules violates those rules and therefore Fed.R.Civ.P. 83 as well. Because the violation here clearly prejudiced Martel's ability to prepare his case, we must reverse.
 
 III.
 
 24
 Because Martel failed to file a trial transcript in this court, the defendants argue that we must dismiss his appeal for violation of Fed.R.App.P. 10(b)(2). Martel did not violate Rule 10(b)(2) which states:
 
 
 25
 If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such findings or conclusion.
 
 
 26
 By its terms, Rule 10(b)(2) does not impose a general obligation on all appellants to file a trial transcript in the court of appeals. It only imposes an obligation to file relevant excerpts from the transcript where resolution of the appellant's specific claims of error requires an examination of those particular parts of the transcript. Moreover, the rule on its face applies only where an appellant is challenging a specific finding or conclusion. Here, Martel is objecting to the very fact that the trial was held at the time it was, not to particular acts or omissions in its course.
 
 
 27
 Our cases have made clear that Rule 10(b)(2) does not impose a general obligation on appellants to furnish copies of transcripts. See, e.g., Syncom Capital Corp. v. Wade, 924 F.2d 167, 169 (9th Cir.1991). In Syncom Capital, Wade claimed on appeal both that the district court's findings of fact were insufficient under Fed.R.Civ.P. 52(a) and that they were clearly erroneous. Since resolution of these issues necessarily required an examination of the trial record, we dismissed the appeal because Wade failed to provide any of the trial testimony.[5] However, we made clear in Thomas v. Computax Corp., 631 F.2d 139, 141 (9th Cir.1980), that the appellant's burden was not to provide us with the entire transcript, but instead only to provide those parts of the transcript relevant to his claims. In Thomas, a woman appealed from a district court's rejection of her sex discrimination claim against a potential employer. On appeal, she challenged the district court's findings as inconsistent with the evidence but failed to include in the record any transcript of the district court proceedings. We concluded that Thomas had violated Rule 10(b) because she had "failed to designate and prepare as part of the record on appeal the witness' testimony relevant to her contention that the evidence was insufficient to support the trial court's finding and judgment." Id. (emphasis added). Although we specifically limited the appellant's obligation to one of "order[ing] the necessary parts of the record," we dismissed the appeal because Thomas had failed to provide any of the relevant portions of the transcript. Id. (emphasis added).
 
 
 28
 Because Rule 10(b)(2) only requires an appellant to provide us with those portions of the transcript which are relevant to his claim of error, it imposes no obligation on him to provide us with any part of the transcript if "the error complained of on appeal" is "fully apparent on the face of the record on appeal." United States v. Mills, 597 F.2d 693, 698 (9th Cir.1979). Martel's appeal is exactly the kind of case in which an appellant need not file a transcript, for the error of which he complains--the district court's denial of any continuance--is "fully apparent on the face of the record." Moreover, not only is the district court's error fully apparent even without a trial transcript, the prejudicial effect of that error is fully apparent as well.[6] The district court's erroneous denial of a continuance prevented Martel from deposing any of the defendants and also prevented him from receiving written discovery from seven of them. Because the lack of discovery affected the course of the trial in ways which we would never be able to determine even with a trial transcript, Martel was under no obligation to provide us with one.[7] Accordingly, we see no need to look past the district court's clear abuse of its discretion in forcing Martel to trial before he had a reasonable opportunity for discovery.
 
 IV.
 
 29
 We also deny the defendants' request for sanctions and attorneys' fees. The request borders on the frivolous, for Martel's appeal clearly has merit. Sanctions are an extraordinary remedy. Cf. Chambers v. NASCO, Inc., 501 U.S. 32, 43-46, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991) (stating that the court's inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process" must "be exercised with restraint and discretion"). They will not be granted--nor should they be sought--as a matter of routine. Moreover, a party should not seek sanctions when, as in this case, its adversary's position is clearly not frivolous. Parties who improperly seek sanctions, particularly repeat offenders, risk being subjected to sanctions themselves.
 
 V.
 
 30
 The judgment of the district court is REVERSED and the case is REMANDED for a new trial following a sufficient period for discovery. Because the district court's dismissal of Martel's Monell claims was predicated on the jury's verdict, the district court is instructed to reinstate those claims as well.
 
 WILLIAM A. NORRIS, dissenting:
 
 31
 It is the law of our circuit that when a district court denies discovery, the party complaining of error must show actual and substantial prejudice to obtain a reversal on appeal. See Sablan v. Dep't of Finance of N. Mariana Islands, 856 F.2d 1317, 1321 (9th Cir.1988) (a court's "decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.") (inner quotation marks omitted); Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 540 (9th Cir.1986); Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 n. 1 (9th Cir.1977).[1] The majority disregards circuit law and holds that a denial of "meaningful discovery" is a structural error that is per se harmful.[2]
 
 
 32
 The majority goes astray in its analysis by focussing on the impact of a denial of discovery on the discovery process itself rather than its impact on the outcome of trial. The following statement makes this clear: "Although we do not know what kind of case Martel actually put on at trial, we do know that his preparation for that trial was manifestly prejudiced." Majority Opinion at 945-46. It is also settled law, however, that prejudice must be measured in terms of the likelihood that the alleged error changed the result of the trial. See Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1966) (focussing on the "likelihood of [the error] having changed the result of the trial"). Unless we know "what kind of case Martel actually put on at trial", we cannot judge the likelihood that further discovery by Martel would have affected the outcome of that trial.
 
 
 33
 The reason we do not know what kind of case Martel put on at trial is that he has made no effort to tell us. For all we know, Martel's case was so weak that it would not have survived a summary judgment motion had there been one. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted.") (inner quotations omitted). For all we know, Martel's theory of the case is facially implausible and his evidence completely lacking in probative value. And for all we know, the testimony of the officers involved may have been completely plausible and fully supported by the physical and documentary evidence.
 
 
 34
 On appeal, the burden is on Martel to make a showing of a reasonable likelihood that the denial of further discovery affected the outcome of the trial. He cannot carry that burden without telling us at least something about what happened at trial. But he tells us nothing, not what the testimony was, on what points it was in conflict, or how additional discovery might have been helpful in presenting the case to the jury in a light more favorable to Martel on the disputed issues. By failing to tell us anything about the trial, or to provide us with a trial transcript or even portions thereof, Martel fails to carry his burden of showing a likelihood that the denial of further discovery would have changed the result of the trial. The majority is dead right that "we do not know what kind of case Martel actually put on at trial." Martel has not told us.
 
 
 35
 Nonetheless, the majority excuses Martel from his burden of showing that the outcome of trial was likely affected by the denial of discovery because the majority believes that "it is both unfair and pointless to require a specific showing of the impact the district court's error had on the outcome of the proceeding." Majority Opinion at 944-45. Even if the prejudice requirement were not the law of the circuit, I would disagree with the majority that we should adopt a structural rule dispensing with the requirement of showing trial prejudice in cases of denial of discovery.
 
 
 36
 "Structural" rules that presume prejudice from trial court error are the exception, not the rule. Generally, parties are required to show that trial court error was in fact prejudicial.[3] I see no justification for creating an exception to the general rule for what the majority calls a denial of "meaningful discovery."[4] It is not unduly burdensome to require a party seeking reversal for a denial of discovery to tell us at least something about the trial issues and evidence that would help us to make a judgment on the likelihood that additional discovery would have affected the outcome of the trial. Litigators routinely dissect a trial to find a basis for arguing that trial court error was prejudicial. In this case, for example, Martel may have been able to carry his burden merely by showing that the case turned on a battle of credibility between his witnesses and the officers, that the testimony on both sides was reasonably credible on its face, and that the outcome could easily have been different if he had been given the opportunity to probe for possible inconsistencies in the officers' testimony in the informal, relatively risk-free setting of a deposition outside the presence of the jury. For our part, we routinely review such claims of trial prejudice despite their inherently speculative nature. But we are not expected to decide such issues without help from the party asserting the claims. In this case, Martel has provided us with no help whatsoever. In sum, I see no basis in reason, experience, precedent, or the circumstances of this particular case for creating a discovery exception to the general rule requiring a showing of a likelihood that trial court error affected the outcome of the trial.
 
 
 37
 Finally, the majority's reliance on United States v. Lane, 765 F.2d 1376 (9th Cir.1985), as authority for relieving Martel of his burden of showing prejudice in terms of the outcome of the trial is misplaced. See Majority Opinion at 945. In Lane, we held that Lane failed to show actual prejudice because he "ha[d] not specified which witnesses his defense attorney would have interviewed, which documents and exhibits he was unable to examine, or what defenses he might have explored." Id. The majority cites Lane as authority that Martel has carried his burden of showing prejudice simply by identifying witnesses he wanted to depose and documents he wanted to examine. But this reading turns Lane on its head. Lane merely holds that in failing to specify any witnesses, documents or theories he would have pursued on discovery, he failed to make the required showing of prejudice. It cannot be read as authority for the logically different proposition that Martel carried his burden of showing prejudice merely by identifying some witnesses he wanted to depose and some documents he wanted to examine. In other words, Lane does not inform the question whether Martel made a sufficient showing of prejudice to get a new trial; it tells us only that Lane fell short in identifying no witnesses or documents whatsoever.
 
 
 38
 In sum, Martel has failed to carry his burden of showing trial prejudice because he has failed to make any showing that the outcome might have been different had he been given a further opportunity for discovery. He tells us nothing about the trial except that the jury returned a defense verdict. This is not enough. Nonetheless, the majority bails him out by adopting a new structural rule that irrebuttably presumes prejudice when there is a denial of "meaningful discovery"--whatever that means--a rule that not only conflicts with circuit precedent, but is unsound as a basis for reversing judgments entered following trial.[5] I dissent.
 
 
 
 [1]
 See Monell v. Department of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)
 
 
 [2]
 We emphasize that this is not a case where the district court's error cut off only a comparatively insignificant amount of discovery. Martel had no opportunity to depose any of the defendants, and his requests for written discovery of the seven defendants added in his amended complaints would not come due until after trial
 
 
 [3]
 One of the district judge's standing orders purports to waive the early meeting report requirement. This is apparently a sua sponte action by the judge. See Order of May 31, 1991, at 1-2. However, Local Rule 9.11, which provides the procedures for waiver of the pretrial rules, appears by its terms to allow such waivers only if the parties request them. We need not determine whether the district judge validly waived the pretrial rules, however, because the 101-day interval between service of the answer and the pretrial conference in this case would have violated the local rules even if the district judge's purported waiver were effective
 
 
 [4]
 This is not a case where a district judge exercised his discretion to determine that, under all of the circumstances, a departure from the local rules would be "so slight and unimportant that the sensible treatment is to overlook [it]." Allen v. United States Fidelity & Guaranty Co., 342 F.2d 951, 954 (9th Cir.1965). Rather, it is a case where a district judge's standing order, enforced in every case, violates the local rules. This is precisely the situation the drafters of the 1985 amendment to Rule 83 sought to reach
 
 
 [5]
 See also Southwest Administrators, Inc. v. Lopez, 781 F.2d 1378, 1379-80 (9th Cir.1986) (dismissing appeal where appellant challenged district court's findings of fact but failed to provide any part of the trial transcript); cf. In re Ashley, 903 F.2d 599, 603 n. 1 (9th Cir.1990) (refusing to consider whether an affidavit of nonservice undermined the district court's finding that a witness was unavailable where the appellant failed to include the affidavit in the record before the court of appeals); Portland Feminist Women's Health Center v. Advocates for Life, Inc., 877 F.2d 787, 789-90 (9th Cir.1989) (refusing to consider claim in appeal from contempt citation that district court erred in finding that appellants acted in concert with named defendants and had actual knowledge of the injunction they violated where appellants failed to provide a transcript of the contempt hearing)
 
 
 [6]
 Because the harm resulting from the district court's error in this case is clear even without consulting the trial transcript, we need not consider whether Rule 10(b)(2) requires an appellant to provide portions of the transcript when the district court's error is apparent on the face of the record, but the prejudicial effect is not. We note, however, that under the plain language of Rule 10(b)(2) the appellant is only required to include a transcript of evidence relevant to the specific "finding or conclusion" he is challenging, and that Martel furnished us with a transcript of the hearing at which the continuance was denied. We also need not consider whether any other provision might under some circumstances require an appellant to provide us with a trial transcript for the sole purpose of demonstrating prejudice
 
 
 [7]
 We note that, had the defendants determined that portions of the trial transcript would have negated Martel's claim of error or prejudice, Rule 10(b)(3) provided them with the opportunity to file these portions with the court. We also note that, if a court considers it necessary to consult a portion of the transcript which the parties have not included in the record on appeal, it can order the parties, under Rule 10(e), to provide the court with that part of the transcript
 
 
 [1]
 In this case, as in Sablan, "a continuance was sought for the purposes of conducting discovery, and hence its denial was effectively a denial of discovery." Id. at 1321. See also United States v. Lane, 765 F.2d 1376, 1379 (9th Cir.1985) (movant must show actual prejudice before a denial of a motion for continuance will be reversed); United States v. Mitchell, 744 F.2d 701, 705 (9th Cir.1984) (same)
 
 
 [2]
 Although the majority does not expressly use the term structural error, it is clear that the majority adopts precisely this kind of rule. The majority writes: "it is both unfair and pointless to require a specific showing of the impact the district court's error had on the outcome of the proceeding." Majority Opinion at 944-45. As authority for this proposition, it cites Hays v. Arave, 977 F.2d 475 (9th Cir.1992), which is a structural error case. See id. at 482 (unconstitutional in absentia sentencing of a criminal defendant is structural error)
 
 
 [3]
 See Fed.R.Civ.P. 61 ("[N]o error or defect in any ruling ... is ground for ... setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.")
 
 
 [4]
 The majority makes no attempt to give content to its "meaningful discovery" standard. Instead, it muddies up the legal waters by employing an elastic, vague, and ultimately meaningless phrase that will be the source of vexatious litigation in the future
 
 
 [5]
 Because I believe Martel has failed to make the required showing of actual prejudice, I do not address whether the district court abused its discretion in denying Martel's motion for a continuance